**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAMELA BROOKS, | : | |
| Plaintiff, | : | Civil Action No. 04-3902 (JAG) |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : | **OPINION** |
| Defendant. | : | |

**GREENAWAY, JR., U.S.D.J.**

### INTRODUCTION

Plaintiff Pamela Brooks seeks review of the Commissioner of Social Security's ("Commissioner") decision denying her application for Supplemental Security Income benefits. This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).[1]  For the reasons set forth in this opinion, this Court affirms the decision of the Commissioner.

### PROCEDURAL HISTORY

On January 31, 2002, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits claiming disabilities of fibromyalgia and degenerative disc disease. (Tr. 52.) Following the Social Security Administration's denial of Plaintiff's application for benefits, Plaintiff filed a request for reconsideration on February 12, 2003. (Tr. 27.)  On reconsideration,

---

[1] This section of the Social Security Act (hereinafter the "Act") provides that any individual may obtain a review of any final decision of the Commissioner made subsequent to a hearing to which s/he was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action.  42 U.S.C. § 405(g).

1

Plaintiff's request for SSI was independently reviewed by a physician and disability examiner before being denied on March 27, 2003.  (Tr. 29.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 28, 2003.  ALJ Ralph Muehlig issued his decision on January 15, 2004, and presented this summary of his findings:

1. The claimant has not engaged in substantial gainful activity since her application date.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements of 20 C.F.R. § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. Claimant's subjective complaints of pain, symptoms, and limitation are not credible.

5. The ALJ carefully considered all the medical opinions in the record regarding the severity of the claimant's impairments.

6. Claimant retained the residual functional capacity to perform "medium" work at all times.

7. The claimant's past relevant work as a classroom aide did not require the performance of work-related activities precluded by her residual functional capacity.

8. The claimant's medically determinable degenerative disc disease of the lumbar spine and fibromyalgia syndrome do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision.

(Tr. 17.)  Based on these findings, ALJ Muehlig concluded that Plaintiff was not eligible for SSI payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act.  (Id.)

On February 23, 2004, Plaintiff requested that the Appeals Council review the ALJ's decision.  The Appeals Council denied Plaintiff's request.  Plaintiff commenced this appeal to

2

review the decision of the ALJ, pursuant to 42 U.S.C. § 1383(c)(3). Plaintiff is pro se and submitted a one-paragraph brief in which she wrote that she is chronically sick with various illnesses. This Court interprets Plaintiff's letter as a request to review the Commissioner's decision that Plaintiff is not disabled.

## STATEMENT OF THE FACTS

### A. Background

Pamela Brooks was born on July 25, 1967, and has an eleventh grade education. From October 1997 to March 1998, she worked as a classroom aide at a pre-school for approximately two hours per day. Her responsibilities included watching over children while they napped, wiping down tables, and setting up cots. (Tr. 53.) On Plaintiff's application for SSI benefits, she claims that her job required her to lift up to ten pounds a day frequently. (Tr. 53.) Plaintiff testified that she stopped working as a classroom aide to take care of her sick child. (Tr. 195.) Plaintiff had no earnings during calendar years 1999 through 2002. (Tr. 46-48.) She testified that she receives welfare payments from the government. (Tr. 193.) Plaintiff also testified that she became disabled on June 1, 2000, while riding a New Jersey transit bus. The bus stopped abruptly at a traffic light and Plaintiff was "thrown a few seats over," which allegedly caused head, neck, and back injury. (Tr. 197.) Plaintiff claims that her disabilities are fibromyalgia[2] and degenerative disc disease. (Tr. 52.) At the time of the Complaint, Plaintiff indicated that she lived with her six children, ages eighteen, sixteen, twelve, nine, four, and three. (Tr. 195.) On her SSI claim application, she indicated that she performed common household chores, such as laundry, preparing meals, and shopping. (Tr. 72-73.)

---

[2] "*Fibromyalgia* is a form of nonarticular rheumatism characterized by muscle pain, spasm and stiffness, fatigue, and severe sleep disturbance. Common sites of pain or stiffness can be palpated in the lower back, neck, shoulder region, arms, hands, knees, hips, thighs, legs, and feet." Mosby's Medical, Nursing, & Allied Health Dictionary, 676 (6th ed. 2002).

3

**B.**     **Medical History**

Following the bus incident, Plaintiff was treated at the Newark Beth Israel Medical Center Emergency Room, and given Tylenol and Flexeril for her pain. (Tr. 183.) Medical records from Newark Beth Israel Medical Center, between February 2001 and April 2002, indicate claimant was treated for a variety of complaints "including asthma, back pain, neck pain, limb pain, left shoulder pain, and joint pain." (Tr. 14.)

On February 15, 2001, Plaintiff complained about symptoms of shortness of breath, chest tightness, and dry coughs. The attending physician, Dr. Alex Lam, recommended a pulmonary function test, and observed that Plaintiff's lungs were clear with no wheezing or rales. (Tr. 112.) A pulmonary function test on February 23, 2001, concluded that Plaintiff had "no apparent ventilatous defect." (Tr. 125.) On August 11, 2001, a nuclear physician concluded that Plaintiff's knee joint pains were the result of "mild increased uptake," which suggests arthritic changes. (Tr. 129.) On September 18, 2001, Plaintiff again went to Beth Israel with complaints of asthma, shoulder pain, back pain, and knee pain. The attending physician wrote in the medical record that the asthma is being controlled with an inhaler. (Tr. 98, 101.) The physician also observed that Plaintiff's lungs were clear with no wheezing, Plaintiff had lumbar spine tenderness but no joint pain, and her muscle strength is five out of a rating of five in all extremities. (Tr. 98-102.) The attending physician recommended physiotherapy and MRI scans of the lumbosacral spine and cervical spine. (Id.)

On October 11, 2001, MRI scans indicated that Plaintiff's cervical spine is "normal." (Tr. 117.) However, the MRI scan of the lumbar spine indicated Plaintiff suffered from degenerative disc disease at L4/5 level with a mild disc bulge along with sacralization of L5 vertebra. (Tr. 118.) There was no evidence of spondylolysis or nerve root/spinal cord

4

compression.  (Id.)

On October 18, 2001, Plaintiff returned to Beth Israel and still complained of pain in her back, neck, and shoulder.  (Tr. 104.)  Plaintiff mentioned her pain was improving with the medication Naprosyn.  The attending physician ruled out fibromyalgia and assessed Plaintiff with "generalized body pain."  (Id.)

On January 15, 2002, Plaintiff visited a rheumatologist at Beth Israel.  She continued to complain of "pain in all joints, trouble writing, and headaches."  (Tr. 114.)  Upon examination, the physician observed that Plaintiff's muscle strength was 5/5 in all extremities, Plaintiff had full range of motion in all extremities, no dizziness, and some tenderness of the bilateral wrists, elbows, knees, and ankles.  (Id.)  The physician assessed the patient's symptoms as fibromyalgia, prescribed her Elavil, and referred her to an exercise class.  (Id.)

Plaintiff returned to Beth Israel on March 14, 2002 for a follow-up visit.  The attending physician assessed Plaintiff's asthma as stable, and noted back pain as a result of degenerative disc disease, degenerative arthritis of both knees, and fibromyalgia.  The physician recommended that Plaintiff join an exercise class.  (Tr. 108.)

On April 10, 2002, Plaintiff complained of chest pain which radiated to her left arm and neck, along with shortness of breath when she climbed up stairs.  (Tr. 110.)  The attending physician stated that Plaintiff's lungs were clear to auscultation and recommended an echocardiogram.  (Id.)

On August 19, 2003, Plaintiff's rheumatologist at Beth Israel, Dr. Mainardi, indicated that Plaintiff had fibromyalgia since January 2002.  (Tr. 148.)  He also indicated that her condition was stable, she was fully ambulatory, and she did not require assistive devices to ambulate.  (Id.)  The physician also indicated that Plaintiff was able to perform "light work

5

only," although she could still participate in volunteer or community service programs or enter into a school or vocational training program. (Id.) Plaintiff was limited in walking, climbing, stooping, bending, and lifting because of diffuse musculoskeletal pain and fatigue. (Tr. 149.) However, the doctor stated that Plaintiff maintained "functional capacity to conduct normal activities despite handicap, discomfort, or limited mobility of one or more joints." (Id.) Dr. Mainardi opined that Plaintiff would be temporarily disabled from August 5, 2003 to February 14, 2004. (Tr. 150.)

On December 3, 2003, Plaintiff continued to complain of generalized pain, cramps, and migraine headaches. The physician observed that Plaintiff's lungs were clear and she had tenderness of the lower extremities. The physician prescribed medication for Plaintiff's fibromyalgia and headaches. (Tr. 154-55.)

On December 7, 2003, Plaintiff was evaluated by an ophthalmologist, Dr. Christopher Seery. Dr. Seery assessed Plaintiff's vision as 20/20 in both eyes. (Tr. 153.) Dr. Seery issued a "Return To Work Authorization Form" on December 22, 2003, which indicated that Plaintiff had a retinal hole in her right eye. (Tr. 152.)

## DISCUSSION

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Hecker, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  Tayborn v. Harris, 667 F.2d 411, 413 (3d Cir. 1980) (quoting Hess v. Secretary of Health, Education and Welfare, 497 F.2d 837, 841 (3d Cir. 1974)).  Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).  Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.     Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for SSI benefits, a claimant must first establish that she is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if she is

unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### C.  The Five Step Evaluation Process and the Burden of Proof

Determination of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. 20 C.F.R. § 404.1520(b); Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limits

8

[a claimant's] physical or mental ability to do basic work activities." Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meet or equals one of the listed impairments he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but must merely ensure "that there be sufficient explanation to provide meaningful review of the step-three determination."  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform her past relevant work, she will not be found disabled under the Act.  If the

9

claimant is unable to resume her past work, and her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, claimant will be found not disabled.  Id.

**D.**     **ALJ Muehlig's Findings**

ALJ Muehlig applied the five-step evaluation process to determine that Plaintiff had no disability, as supported by objective evidence in the record.  (Tr. 16, 17.)  At step one, ALJ Muehlig found that Plaintiff has not engaged in any gainful activity since her application date for SSI benefits.  (Tr. 15.)  At step two, ALJ Muehlig concluded that Plaintiff's severe impairments were fibromyalgia and degenerative disc disease of the lumbar spine.  (Id.)  The ALJ also held that Plaintiff's subjective complaints of disabling pain and limitations on sitting, standing, walking, lifting, and carrying were not credible, and that these symptoms alone, independent of fibromyalgia and degenerative disc disease, were not "severe impairments."  At step three, the ALJ found that Plaintiff did "not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed" in Appendix 1 of 20 C.F.R. § 404.  (Id.)  At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform past relevant work as a classroom aide.  The ALJ held that Plaintiff did not prove that she was disabled.  (Tr. 17.)

**E.**     **Analysis**

Plaintiff sent this Court a letter, in place of a formal brief, stating that she has "various

illnesses" that keep her in pain and "too many health issues." (Pl.'s Br. 1). This Court interprets the letter as asking that ALJ Muehlig's decision be reversed because it is not supported by substantial evidence. This Court finds that the ALJ correctly determined that Plaintiff is not disabled because she retained the residual functional capacity to perform her past relevant work as a classroom aide.

At step one, the ALJ's determination that Plaintiff had not been gainfully employed when she filed a claim for SSI benefits is undisputed. At step two, the ALJ found that Plaintiff's impairments -- fibromyalgia and degenerative disc disease of the lumbar spine, are severe and this conclusion is supported by substantial evidence. Plaintiff's subjective complaints included asthma, damage to her eyes, joint pains, back pains, and arthritis. The "Third Circuit standard as to subjective complaints . . . requires that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence." Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981)). The ALJ considered all subjective complaints in determining what symptoms constituted a "severe impairment" by giving:

> careful consideration to such matters as: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record.

(Tr. 15.) Moreover, the ALJ's decision on which impairments were "severe" comports with the objective medical records offered by Plaintiff's physicians. "The ALJ may not discount the claimant's pain without contrary medical evidence." Green, 749 F.2d at 1068. Subjective complaints are not dispositive in determining disability. "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability

11

benefits, providing, of course, the claimant satisfies the requisite burden of proof." Id. at 1069. Plaintiff did not meet her burden of proving that her subjective complaints are impairments which would severely hinder her from performing basic work activities.

ALJ Muehlig's determination that Plaintiff's asthma and eye problems were not severe impairments was based on substantial evidence. A pulmonary function test was performed after Plaintiff complained of shortness of breath and tightness of chest. This test showed that Plaintiff had no ventilatous defect. (Tr. 125.) A chest x-ray taken on March 7, 2002 revealed that Plaintiff's "lungs are clear" and her chest is normal. (Tr. 132.) Moreover, when Plaintiff returned to Beth Israel Hospital on March 14, 2002 for a follow-up examination, the doctor noted her asthma was stable. On April 10, 2002, the doctor assessed Plaintiff, noting that her lungs were clear to auscultation. Plaintiff's ophthalmologist, Dr. Seery, indicated that Plaintiff had visual acuity of 20/20 in both eyes. (Tr. 153.) There is no evidence in the record to support Plaintiff's allegations that she has a visual impairment. The fact that Plaintiff still had full vision in her eyes supports the conclusion that she is not precluded or limited from doing any basic work activities. Moreover, Plaintiff's SSI benefit application indicated that she enjoyed reading as a hobby, and she helped her children with their homework and studies. Based upon the evidence offered by Plaintiff, the ALJ's decision that her asthma and eye problems are not severe impairments is supported by substantial evidence.

ALJ Muehlig proceeded to step three of the analysis to determine whether Plaintiff's degenerative disc disease and fibromyalgia were severe enough to presume a disability based on Appendix 1. The ALJ determined that Plaintiff's impairments do not meet the impairments referenced under 20 C.F.R. § 404.1594(f)(2). It is the plaintiff's burden to prove that her severe impairments qualify under the listed impairments. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, Plaintiff's degenerative disc disease of the lumbar spine is compared to Listing Section 1.04, which covers "Disorders of the Spine" in Appendix 1, Subpart P of 20 C.F.R. § 404. Plaintiff must show that her back pain stems from damage such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthiritis, degenerative disc disease, facet arthritis, vertebral fracture, resulting in compromise of a nerve root or the spinal cord." 20 C.F.R. § 404.

The evidence that Plaintiff offered indicates that an MRI was performed on her cervical spine and lumbar spine. The cervical spine study was "normal," and the lumbar spine study showed "a mild disc bulge . . . [but] no evidence of spondylolysis or spondylolisthesis . . . [and] no evidence of cord or neural compression." (Tr. 117, 118.) Plaintiff's physicians noted that she has full range of motion and "functional capacity to conduct normal activities despite handicap, discomfort, or limited mobility of one or more joints." (Tr. 149.) Medical records also indicate that Plaintiff was fully ambulatory, without the need of any assistive devices. Moreover, Plaintiff had full power in her extremities and bilateral wrists, elbows, knees and ankles. (Tr. 114.) The medical reports do not support findings of nerve root compression, neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, or sensory or reflex loss, as required by the listing.

Plaintiff's diagnosis of fibromyalgia, by her rheumatologist in January 2002, does not have a section in Appendix 1. There is no medically equivalent listing under Appendix 1 of 20 C.F.R. § 404 because Plaintiff had no gross neurological impairments, and the listing provides no impairment equivalent to fibromyalgia. Medical records show that Plaintiff's rheumatologist assessed Plaintiff's fibromyalgia condition as stable. The record also shows that she could perform light work and was able to participate in community service programs or enter into a school or vocational training program. (Tr. 148, 149.) Plaintiff has not satisfied her burden of

13

proof in showing that the ALJ's determination was in error.

The ALJ proceeded to step four of the analysis to determine that Plaintiff had the residual functional capacity to perform past relevant work.  Residual functional capacity ("RFC") is an administrative assessment of an individual's maximum ability to perform work activity.  The responsibility rests exclusively with the ALJ and Commissioner to determine whether claimants maintain RFC.  "Although we consider opinions from medical sources on issues such as . . . residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. § 416.927(e)(2).  "If [claimant's] case is at the administrative law judge hearing level under § 416.1429 . . . [the] administrative law judge is responsible for assessing [claimant's] residual functional capacity."  20 C.F.R. § 416.946(c).  The ALJ deemed the State agency disability examiner's opinion that Plaintiff maintained RFC to perform "light work" to be persuasive, but not determinative.  The ALJ found that the state agency examiner's opinion was not adequately explained, and his decision was based on limited evidence.  Instead, the ALJ found that Plaintiff maintained the capacity to perform "medium work."  (Tr. 17.) "Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying objects weighing up to twenty-five pounds.  If someone can do medium work . . . he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

The ALJ's determination that Plaintiff maintained the capacity to perform medium work is substantiated by Plaintiff's medical records and oral testimony.  Plaintiff's physicians indicated that she maintained 5/5 rating in muscle strength in all extremities, x-rays of her cervical spine and left shoulder were negative, she maintained a full range of motion in extremities, and had no gross neurological impairments.  Moreover, her medical records indicated that she did not require any assistive devices to ambulate.  Plaintiff's physicians also

14

suggested that she attend exercise classes or seek physiotherapy as an alternative means to treatment than pain medication. In addition, at the time Plaintiff filed her SSI claim, she was able to walk for up to two blocks or ten minutes without stopping. Also, Dr. Mainardi indicated that Plaintiff's fibromyalgia condition was stable.

Moreover, Plaintiff testified that she quit her job to take care of her sick child, not because of any impairment. She also testified that she took care and supported five of her children that are younger than the age of eighteen. The record also indicated that Plaintiff carried on the duties of shopping, laundry, and traveling to doctors' appointments in her home. This evidence substantially supports the ALJ's decision that Plaintiff's severe impairments are not extreme enough to preclude her from performing "medium work."

The ALJ relied on this evidence to determine that Plaintiff retained the RFC to work as a classroom aide. As a classroom aide, Plaintiff was required to watch over children as they napped, wipe tables, set up cots, and lift up to ten pounds. The ALJ found that employment as a classroom aide does not require Plaintiff to exert energy beyond her current condition. Furthermore, as the Plaintiff has the burden of proof, she did not provide substantial evidence to support that she is unable to perform "medium work." Accordingly, the ALJ held that Plaintiff retained residual functional capacity to perform her past relevant work.

The ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, because Plaintiff retained the residual functional capacity to perform her past relevant work at step four. It was not necessary for the ALJ to proceed to step five of the sequential analysis to determine whether there are other jobs existing in the national economy that would be suitable for a person in Plaintiff's condition.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence. The decision of the Commissioner is AFFIRMED.


Dated: March 22, 2006

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.